# SUFFOLK COUNTY.

HENRY K. OLIVER *vs.* WASHINGTON MILLS.*
SAME *vs.* PRESIDENT, DIRECTORS AND COMPANY OF THE
WEBSTER BANK.
SAME *vs.* FIREMEN'S INSURANCE COMPANY.
SAME *vs.* BOOTT COTTON MILLS.

The legislature have no power to pass a statute requiring domestic corporations to reserve
and pay into the treasury of the Commonwealth a certain portion of all dividends de-
clared by them on shares of non-resident owners.

THE *first* of these was an action of contract brought by the
treasurer of the Commonwealth against a corporation created
by *St.* 1858, *c.* 124. The declaration alleged that by *St.* 1863,
*c.* 236, the corporation became obliged to reserve from each and
every dividend one fifteenth part of that portion due and pay-
able to holders of stock residing out of the Commonwealth, and
to pay the same to the treasurer of the Commonwealth within
ten days after such dividend should be declared payable; that
on the 12th of June 1863 the corporation declared a dividend of
ten dollars on each share of its capital stock, and on the 18th
of said June made a return as required by law, a copy of which
was annexed, [showing the names of non-resident owners of
shares, to the number of 2408,] and that the corporation there-
upon became bound to reserve the sum of $1605.33, and pay
the same to the treasurer of the Commonwealth on the 22d of
said June; yet, though requested, the corporation had not paid
the same.

* These cases were argued in March 1865.

There was another similar count, founded upon a subsequent dividend.

The parties agreed that the facts set forth in the declaration were true ; and judgment was rendered in the superior court for the plaintiff, and the defendants appealed to this court.

The *second, third* and *fourth* were actions of contract against other corporations of this commonwealth, and the allegations of the declarations were similar to those in the first case. In each of these cases the defendants filed a general demurrer, which was sustained in the superior court, and judgment ordered for the defendants ; and the plaintiff appealed to this court.

*Reed,* A. G., for the plaintiff. The property taxed by the statute in question is the stock of the corporations. The title of the act shows this.* When there is an ambiguity in the words of a statute, the title will aid in determining the intention of the legislature. *United States* v. *Fisher,* 2 Cranch, 386. *United States* v. *Palmer,* 3 Wheat. 631. The words of section 1 of the statute also show this. If not a tax on the stock, it is a tax on the dividend, as money in the hands of the corporation which is the gain, profit and income of business done in this commonwealth. This is a legal subject of taxation, whether it be stock or dividend. Our own citizens may be compelled to pay to the Commonwealth any proportion of their dividends on corporate stock. The fact that this property belonged to non-residents affords no ground for holding the act imposing the tax to be void. Our constitution authorizes, or certainly does not forbid, the taxing of all property

---

* *St.* 1863, c. 236. " An act to levy a tax on the stock of corporations held by persons whose residence is out of the Commonwealth." Section 1 is as follows : " Every corporation organized under a charter or under general statutes, paying dividends in scrip, stock or money, shall reserve from each and every dividend one fifteenth part of that portion due and payable to its stockholders residing out of the Commonwealth, and shall pay the same as a tax or excise, on such estate or commodity, to the treasurer of the Commonwealth, within ten days after such dividend is declared payable ; *provided,* that this act shall not apply to stock standing in the name of executors, administrators or trustees, when the income is payable to persons residing in this state so that the stock is liable to taxation under existing laws." This statute was repealed by *St.* 1864, c. 208, § 18

within the state, no matter to whom it belongs. There is no restraint upon the power of the legislature to lay taxes, except such as the constitution of the United States or that of the state imposes. See *Mc Culloch* v. *Maryland*, 4 Wheat. 429 *Osborn* v. *Bank of United States*, 9 Wheat. 738 ; *Plowden* v. *City Council of Charlestown*, 2 Pet. 449 ; *Providence Bank* v. *Billings*, 4 Pet. 514; *Hoyt* v. *Commissioners of Taxes*, 23 N. Y. 224 ; *Catlin* v. *Hull*, 21 Verm. 152. The term " commodity " in our constitution is of a broad enough signification to include the property taxed in this case. *Commonwealth* v. *People's Savings Bank*, 5 Allen, 428, 435. *Portland Bank* v. *Apthorp*, 12 Mass. 256.

The additional fact that by the statute a tax is imposed only on non-residents does not make the statute invalid. Even if it is admitted that the provision of the constitution of the United States (art. IV. § 2) was intended to protect citizens of each state from a higher tax upon their property than was imposed upon citizens of the state where the property chanced to be, yet this provision cannot be construed to forbid a state to impose a different tax, or to provide for its collection in a different manner, in case of residents and non-residents, provided the tax imposed on the non-resident is not higher than the resident is obliged to pay. Various of the states provide for a different process in suits against non-residents. See *Campbell* v. *Morris*, 3 Har. & McHen. 535; *Ward* v. *Morris*, 4 Har. & McHen. 341. And this course may be necessary. If then the tax imposed on non-residents is not higher than that which citizens are obliged to pay, the constitution of the United States does not forbid it. In considering whether it is higher, we must look at all the legislation of the state authorizing taxation. The tax is not so high as those imposed on citizens. At all events, the court cannot know that it is so. We pay a tax on stock *eo nomine*. But if the court should find this to be a tax on income or dividends, upon which, *eo nomine*, citizens pay no tax, yet if the court cannot see that an assessment in this manner is more onerous upon the non-resident than the taxes on citizens, in the manner in which they are imposed, are upon them, the statute should be sustained.

If this statute can be sustained on the ground that it imposes either a tax, excise or duty, the court will assume that it was the intention of the legislature to impose whichever of them should come within their constitutional powers. *Commonwealth v. People's Savings Bank*, 5 Allen, 432. Clearly the legislature might have annexed to the charters of the defendants a provision that a tax should be paid to the Commonwealth upon all stock owned by non-residents. The legislature have reserved the power to alter the charters of all corporations chartered since 1830. This statute may be regarded as an alteration of charters. See *Mass. General Hospital* v. *State Mut. Ass. Co.* 4 Gray, 234.

All authority of towns or counties to impose taxes is derived from the legislature; and this power might be reassumed by the legislature, and the taxes might be assessed by state officials, collected by state officers, and paid into the state treasury. The state may resume the right which it has delegated to towns and counties. It is also unquestionable that all the property and all interests in property in the state are subjects of taxation in some form. If the power to tax any such property or interests has not been delegated to the towns, then it still exists in and may be exercised by the legislature. And it must follow that an act of the legislature imposing a tax is not rendered invalid by the fact that the tax is imposed only on a portion of the property in the state, provided that by other acts the legislature have imposed or authorized towns to impose a tax upon the other property in the state.

Whether a tax is reasonable is exclusively for the legislature. It is a coördinate branch of the government. No taxes are or can be absolutely proportional. There must be a reasonable approach to equality in taxation. The words "reasonable and proportional" do not limit the power of the legislature or increase the power of the courts. All laws must be just and equal. What is a reasonable approach to equality and proportion is for the legislature. It is sufficient for the courts to ascertain whether the legislature have undertaken to make a fair and just tax. If this has been done, the act must be sustained

unless they have adopted some principle of taxation which is erroneous or manifestly unjust.

The fact that the stockholders intended to be reached live out of the Commonwealth is no ground of objection to the tax. Their persons cannot be reached. But the legislature might have laid the tax, and made it a lien on the shares, as in case of taxes on real estate.

*F. C. Loring & J. Lathrop,* for the Washington Mills.

*B. F. Thomas,* for the Webster Bank and Firemen's Insurance Company.

*S. Bartlett,* for the Boott Cotton Mills.

BIGELOW, C. J. No question has been made in these cases as to the form of the actions or as to the right of the plaintiff to recover the sums of money demanded of the several defendants, if it shall be held that the tax or excise established by *St.* 1863, c. 236, is legal and valid. By that statute it was provided that every corporation organized under a charter or under general statutes should reserve from each dividend one fifteenth part of that portion thereof which was due and payable to its stockholders residing out of the Commonwealth, and should pay the same as a tax or excise on such estate or commodity to the treasurer of the Commonwealth. The right of the legislature to impose this tax or excise is the real and only subject of controversy in these actions.

It is by no means certain, on the phraseology of the statute, whether the legislature intended by its provisions to impose a tax or to lay an excise. In the title of the act it is called "a tax on the stock"; in the body of the statute it is denominated "a tax or excise on such estate or commodity." Probably the real purpose was to frame an act to raise a revenue out of certain specified property, by putting it in such shape that it might be held valid either as a tax or an excise, whichever it might be properly called, on a due consideration of the nature of the imposition, the kind or species of property on which it was laid, and the mode in which its payment was to be made and enforced. We shall therefore be more certain of arriving at a result which will cover the whole ground of controversy, and at

the same time leave no room to suppose that the intentions of the framers of the statute have been either overlooked or disregarded, if we consider its provisions in both the aspects which may be taken of their interpretation and meaning.

Before proceeding, however, to determine the question whether the imposition of the tax or excise is valid and within the limit of legislative authority, it is necessary to understand whether it was intended to be laid on the corporations designated in the statute, or upon certain of their stockholders. On this point we cannot entertain any doubt. The purpose of the act in this respect is made manifest from the title. It is declared to be designed " to levy a tax on the stock of corporations held by persons whose residence is out of the Commonwealth." This is equivalent to a declaration that the tax or excise is to be imposed on the property of non-resident stockholders, because the shares in a corporation belong to its stockholders, and not to the corporation. The same intent is clearly shown in the body of the act. The subject of the tax or excise is not the real or personal property of the corporation, nor yet its franchise or corporate power and capacity. The " estate or commodity " which is to be liable to the assessment provided for by the act is that portion of the dividends which may become due and payable to stockholders residing out of the Commonwealth. Such dividends cannot in any just sense be regarded as belonging to the corporation, or as fit subjects of an assessment which is to constitute a corporate charge or burden. It is not until a dividend has been ascertained and declared and made payable to a certain class of stockholders that the subject of taxation or excise contemplated by the statute has any existence. Such dividend is not corporate property. On the contrary, the very act which calls it into being separates it from the property of the corporation, and it thenceforward belongs to the several stockholders, in the proportion in which they own shares in the capital stock. It is from the fund thus created that the tax or excise is to be reserved and paid. It is clearly, therefore, a tax or excise on the income or dividends of stockholders only, and is not intended to be a corporate charge. In order that its payment may be made certain

and convenient, the duty of withholding it from the non-resident stockholders and passing it into the public treasury is imposed on the corporation; but this is directory and incidental only, and in no way affects the nature or substance of the assessment which it was the design of the legislature to establish. The real purpose of the act was to make the property of non-resident stockholders, invested in shares of incorporated companies within this state, subject to taxation or assessment in the mode prescribed; it being found difficult if not impracticable to reach such property under the general laws regulating the assessment of taxes. This is made entirely clear by the terms of the proviso which exempts from the excise or tax prescribed by the act stock standing in the name of executors, administrators and trustees, the dividends on which are payable to non-residents, such shares being subject to taxation in the ordinary mode to those persons in whose names the title to the shares stands.

Regarding, then, the tax or excise as imposed on non-resident stockholders, and not on corporations, the main question recurs, whether the statute can be maintained as a valid exercise of legislative power. As has already been intimated, the words " tax " and " excise," although often used as synonymous, are to be considered as having entirely distinct and separate significations, under the provisions of the constitution of Massachusetts, *c.* 1, § 1, art. 4. The former is a charge apportioned either among the whole people of the state, or those residing within certain districts, municipalities or sections. It is required to be imposed, as we shall more fully explain hereafter, so that, if levied for the public charges of government, it shall be shared according to the estate, real and personal, which each person may possess , or, if raised to defray the cost of some local improvement of a public nature, it shall be borne by those who will receive some special and peculiar benefit or advantage which an expenditure of money for a public object may cause to those on whom the tax is assessed. An excise, on the other hand, is of a different character. It is based on no rule of apportionment or equality whatever. It is a fixed, absolute and direct charge laid on mer chandise, products or commodities, without any regard to the

amount of property belonging to those on whom it may fall, or to any supposed relation between money expended for a public object and a special benefit occasioned to those by whom the charge is to be paid. *Portland Bank* v. *Apthorp*, 12 Mass. 252, 255. *Commonwealth* v *People's Savings Bank*, 5 Allen, 431.

Bearing in mind this distinction between a tax and an excise under our constitution, it would seem to be very clear that the statute in question cannot be supported as a valid exercise by the legislature of the power of taxation. The requirement of the constitution is that all taxes shall be " proportional." If any force or effect is to be given to this word, it must be regarded as a restriction on the power of the legislative department of the government, and to have been intended to prevent the exercise of an unlimited right to impose taxes. Construed with reference to the context, the meaning of the word is clear and definite. In relation to those expenses which are called in the constitution " the public charges of government," as distinguished from local expenditures or charges incurred for the benefit of a particular section or locality, the design of the framers of the constitution was that these, or a portion thereof, should be defrayed by means of taxation; and that in assessing the needful amount it should be laid on property, real and personal, within the Commonwealth, so that, taking " all the estates lying within the Commonwealth " as one of the elements of proportion, each tax-payer should be obliged to bear only such part of the general burden as the property owned by him bore to the whole sum to be raised. This rule of proportion was based on the obvious and just principle that the benefit which each person derives from the government has direct relation to the amount of property which he possesses and enjoys under its sanction and protection. It was to prevent this essential principle from being violated or disregarded, and to render it certain that taxation for general purposes of government should be made equal, that it was expressly provided in the constitution that a valuation of estates within the Commonwealth should be taken anew decennially at least, and oftener if the legislature should order. Having regard to these explicit provisions of the constitution,

we think it clear beyond dispute that an unlimited discretion on the subject of taxation, especially as to money raised for the public charges of government, was not reposed in the legislature. That the power to impose taxes, either directly, by the immediate officers or agents of the Commonwealth, or by means of authority delegated to towns or cities, is vested in the legislature under the constitution, and that this power extends over every species of property within the Commonwealth as well as over persons resident therein, does not seem to be open to question. Indeed it is conferred in express terms; but the limitation of the power is as express as the delegation of it. While on the one hand the authority is conferred in broad and comprehensive terms, so on the other hand the principle on which it is to be exercised is clearly defined. The contention in the present case is not that the legislature had not full authority to tax the shares of non-resident owners. This is conceded. But the controversy is as to the method in which the power has been exercised, and whether the statute has not prescribed a rule of taxation which cannot be carried into effect without exceeding the limitation imposed by the constitution on that power.

No attempt has been made in the arguments, both oral and written, submitted by the attorney general to show that the tax in question, which is a tax imposed for no local object of a public nature but to defray general public charges, is in any just sense proportional. Nor can we see any ground on which it can be plausibly contended that it is so. It is imposed as an absolute fixed tax on certain property belonging to a designated class of persons, without any reference to the elements of proportion which usually and properly enter into and form the basis of assessments for public charges. The imposition of the tax is not affected nor the amount of the exaction varied, either by the fluctuations of the public charges or by the valuation of all the property which is liable to assessment. The rule of taxation is permanent and inflexible, and is to be uniformly applied without any reference to the amount of money to be raised for the general purposes of government, or the sum which is to be assessed on other kinds of property, or the value of all the property in

the Commonwealth which is subject to taxation. It is clearly impossible that a tax of a fixed sum on a particular subject of taxation, which is not graduated either according to the whole sum required to be raised for public objects or by the value and amount of the entire property to be assessed, can be based on any element of proportion or have any relation to other taxes which rise or fall according to the amount to be raised and the value of the property on which they are to be paid. There can be no proportion between that which is fixed and that which is uncertain and fluctuating. It seems to us, therefore, that we cannot uphold the tax in controversy as being within the constitutional authority of the legislature unless we are prepared to say that there is no limitation imposed by the constitution on the discretion of the legislature in the exercise of the power of taxation for general purposes, and that such a tax on one class of persons and property is legal and valid which is not only different in kind from that imposed on all other persons and kinds of property, but which is imposed without any regard to proportion as an element on which it is to be calculated. But this proposition cannot be maintained, for the obvious reason that the power of taxation granted to the legislature for general purposes is expressly limited by the constitution to the imposition of pro portional taxes " upon all the inhabitants of, and persons resident and estates lying within, the said commonwealth." To support the assessments in controversy as a rightful exercise of legis lative authority, it would be necessary to disregard this clear and explicit constitutional provision. The statute authorizes a tax to be imposed on property without regard to any rule of pro portion whatever. It is apparent, therefore, that in enacting it the legislature have adopted an erroneous and unconstitutional basis or principle of taxation.

But it is urged that these words, which seem to limit and restrain the authority of the legislature in the matter of taxation, were not intended to be obligatory in such sense as to render an observance of them essential to the validity of legislative enactments; but that they were designed as directory only, indicating a rule which was to be binding on the

conscience of legislators and to guide their action, but which was not of the essence of the authority delegated to them by the constitution. On mature consideration, we are of opinion that this argument would lead to conclusions dangerous in their consequences and inconsistent with the fundamental principles on which the frame of government rests. Nor can we see any good reason for applying such a rule of interpretation to this part of the constitution. Words and phrases will be held to be directory only when it is clear that the intent was to use them in such a sense, or when a different construction would be attended with unreasonable, absurd or incongruous results. It certainly would be contrary to the ordinary rule of interpretation to say that a grant of power to which qualifying and restrictive words are annexed is nevertheless absolute and unlimited, and that the grantee is to regard them merely as advisory or monitory, and may exercise a power wholly irrespective of them and without limitation, if he sees fit so to do. Not only do we fail to see any ground for the belief that the words in question were intended to be used in the constitution in any peculiar or qualified sense, or were designed to have any other effect than that which would result from the ordinary rule of interpretation, but it appears to us that there is cogent reason for the inference that they were inserted as a restraint on the legislative power of taxation. In a constitution, the great purpose of which was to define and limit the powers of government, it cannot be supposed that the power to lay and assess taxes would be granted to the legislature without any obligatory restraint on its exercise. No power is capable of greater abuse or can be made more oppressive and odious in practice. Of this the framers of the constitution and their contemporaries had had abundant experience and knowledge. Nor can we doubt that by the use of words in the constitution, the natural import of which is to put a limit on the exercise of this power, they intended them to have that operation and meaning. If this be not so, then it would follow that all estates and property within the Commonwealth would be subject to any tax which the legislature might impose, however unreasonable and unproportional it might be No recourse

could be had to the judiciary for redress, because courts could put no restraint on the exercise of a power which had no limit except in the discretion of the body in which it was vested. We cannot come to the conclusion that any such irresponsible power of taxation is lodged with the legislature under our constitution, more especially as we find words the natural and proper construction and effect of which are to put a just and wise restraint upon its exercise. Such was the view which was taken of this clause of the constitution in the early case of *Portland Bank* v. *Apthorp*, already cited. It was there distinctly declared by the court that a tax to be constitutional must be proportional. Undoubtedly great latitude of discretion is given to the legislature within the limits prescribed for the exercise of the power of taxation. A tax would not be declared illegal and void, as being unreasonable, unless it was plainly and grossly oppressive and unequal, or contrary to common right; nor would it be held to be unproportional unless it violated clearly and palpably the rules of proportion which could be properly applicable to the subject matter of a tax. But when, as in the case at bar, a tax is assessed on no rule of proportion, but is laid arbitrarily at a certain fixed amount on one species of property, as respects its ownership, without any regard to other elements which ought to enter into the basis of taxation, then it is clearly unconstitutional and void.

It only remains for us to consider whether the assessments laid on the defendants can be supported as a valid exercise of the power to impose excises. Assuming that a dividend may be deemed to be a commodity or production, and so be considered as coming within the class of subjects on which an excise may be properly laid — a point by no means clear — still there are insuperable difficulties in the way of sustaining the assessment authorized by the statute. In the first place, it is grossly unequal, and does not operate alike on all persons whose property is made subject to it. It was declared by this court in *Portland Bank* v. *Apthorp, ubi supra,* that "taxes of this sort must undoubtedly be equal;" that is, must operate alike on all persons who exercise a particular employment or enjoy the same

privilege or commodity. The same doctrine was affirmed in the recent case of *Commonwealth* v. *People's Savings Bank, ubi supra*. The reason is obvious. 'In the language of the court, an unequal excise would be " contrary to the principles of justice." That the excise in question operates unequally in this sense cannot be doubted. It is laid only on a certain class of stockholders, those residing out of the state, leaving all others who enjoy the same privilege and receive a like profit or gain entirely exempt from any similar charge. This is not the only inequality. Shareholders in one class of corporations, who are resident in other states, are subjected to a rate of assessment higher than the same class of shareholders in other corporations. In manufacturing corporations the profits out of which dividends are declared are diminished by a tax imposed under the general tax act on the machinery belonging to the corporation. To the extent of his share or proportion of this tax each foreign shareholder in effect is subject to it and pays the amount thereof out of his dividend, in addition to the excise thereon. But corporations which are established for purposes other than the carrying on of the trade or business of manufacturing are subject to no such tax on their personal property as that imposed on machinery; so that shareholders in those corporations in fact pay the excise only. The result is that the excise is not only imposed on dividends due to one class of stockholders and not on those due to another class in the same corporation, but a higher rate of excise is paid by non-resident stockholders in one class of corporations than by foreign stockholders in all other corporations.

These inequalities, however, are not the only objections to the validity of the excise. We are unable to see how it can be supported consistently with that provision of the constitution of the United States which secures to the citizens of each state all the privileges and immunities of citizens of the several states. Art. 4, § 2. This clause of the constitution was doubtless taken and condensed from art. 4, § 1, of the articles of confederation and perpetual union, adopted by congress July 9th 1778, and which formed the basis of a national government for the United

States prior to the adoption of the constitution. It was thereby provided that the " people of each state should enjoy in any other state all the privileges of trade and commerce, subject to the same duties, impositions and restrictions as the inhabitants thereof respectively." The object of substituting the constitution for the articles of confederation was to make a more perfect Union. One of the most efficient methods of effecting this purpose was to vest in the general government the power to regulate not only foreign trade and commerce, but also that between the different states of the Union, and to secure an equality of rights, privileges and immunities in each state for the citizens of all the states. It is obvious that the power of a state to impose different and greater burdens or impositions on the property of citizens of other states than on the same property belonging to its own subjects would directly conflict with this constitutional provision. By exempting its own citizens from a tax or excise to which citizens of other states were subject, the former would enjoy an immunity of which the latter would be deprived. Such has been the judicial interpretation of this clause of the constitution by courts of justice in which the question has arisen. *Corfield* v. *Coryell*, 4 Wash. C. C. 380, 381. *Campbell* v. *Morris*, 3 Har. & McHen. 535, 554. *Crandall* v. *State*, 10 Conn. 343.

But it is suggested that it is not made to appear that the effect of this assessment on stockholders residing in other states is to impose a greater burden on them than on citizens of this state. But the suggestion, though specious and plausible, does not seem to us to answer the objection. The excise is in terms confined to stockholders residing out of the state. No such assessment is laid on the citizens of this state. It is a burden wholly different in kind from any which is borne by the resident stockholders. *Primâ facie*, then, a discrimination is made in favor of our own citizens. This inference is not controlled or overcome by the suggestion that shareholders residing in this state are subject to taxation on the value of their shares under the general laws regulating the assessment of taxes, but that the shares of non-resident shareholders are not liable to be

assessed in the ordinary mode. The fact is so certainly. But the reason is that shares in corporations, being personal property, follow the person, and are taxable to the owner in the state where he has his domicil. It cannot be assumed that they are exempt from taxation, or that they are not liable to it, as having a rate of assessment in the place of residence of the owner, as the shares of resident stockholders are subject to it here. Besides ; we can see no mode of working out an equation by which an excise of the nature prescribed by the statute can be shown to have any proportion to the tax on the shares belonging to citizens of this commonwealth.

In the supplemental brief submitted by the attorney general, it is urged that the statute may be supported as an exercise of the right to amend the charters of corporations which is reserved to the legislature. But we see no reason to believe that such is the effect of the statute, or that it was so intended by the legislature. The statute in that respect interprets itself. It is an act to lay an excise or tax on certain stockholders. It is not a tax on the corporation or its franchise, as has been already stated, nor are corporations made liable to pay out of their corporate funds any tax, excise or duty on the shares of non-resident stockholders. If such had been the provision of the statute a very different question would have arisen. But it is a tax or excise laid on the property of each stockholder, after the dividend has been ascertained and declared and become due and payable from the corporation to him. The corporation is only made the agent to pay the tax in behalf of the stockholders. We cannot regard these provisions, so far as they affect the rights of the stockholders only, to be amendatory of the charters. *Judgment for the defendants.*