CITY OF JERSEY CITY, A MUNICIPAL CORPORATION, AND THE MAYOR AND COUNCIL OF HOBOKEN, LIKEWISE A MUNICIPAL CORPORATION, PROSECUTORS-APPELLANTS, v. J. H. THAYER MARTIN, STATE TAX COMMISSIONER ET AL., DEFENDANTS-RESPONDENTS.

Argued February 4, 1941—Decided April 3, 1941.

For the appellants, *Edward P. Stout.*

For the respondent cities of Elizabeth, New Brunswick, Trenton, Hackensack, Burlington, the towns of Montclair, Morristown and Westfield, the Borough of Somerville and other municipalities, *Herbert J. Hannoch.*

For the respondent City of Paterson, *John F. Evans*.

For the respondent City of Plainfield, *William Newcorn*.

. For the respondent Borough of Sayreville, *Joseph T. Karcher*.

Of counsel for the foregoing respondents, *Herbert J. Hannoch* and *Morris Weinstein*.

The opinion of the court was delivered by

HEHER, J. The insistence is that chapters 4 and 5 of the laws of 1940 (*Pamph. L., pp.* 21, 33), contravene article IV, section VII, *placitum* 12, of the state constitution, directing that "Property shall be assessed for taxes under general laws, and by uniform rules, according to its true value," and also section I of the fourteenth amendment of the Federal Constitution, for "lack of uniformity and equality" in (a) the "scheduled property;" (b) the "unit values;" (c) the "classification of the taxpayers;" and (d) the "rates."

It is said that the cited provision of the State Constitution "goes hand in hand with the federal constitutional guarantee of equal protection of the laws," and that "the cardinal rule of uniformity in taxation undel both state and federal constitutions is that the burden of taxation must be borne equally by all in a single class." The language of this state constitutional precept is found to be "broad" and "general," and not "limited to an assessment for the levy of taxes." The argument is made that "the valuation of property for taxing purposes includes the valuation of property for the apportionment of the taxes just as much as the valuation of property for the levy of taxes;" that "the words 'for taxes' include all branches of taxation—the levy of the tax, the collection of the tax, and the distribution of the tax;" that "the constitutional requirement of uniformity is destroyed by any departure from the general requirement in any phase of taxation;" and that "there must be uniformity in the initial valuation of the property, in the rate to be applied, in the collection of the taxes, and in the distribution of the taxes." And it is maintained that it is implicit in this particular constitutional

mandate, construed according to "its spirit and intent," that the municipalities shall "receive a just and fair equivalent under a substituted tax for that which they would receive under the direct taxation of the property."

The "crux" of appellants' "attack on the statutes  *  *  *, both under the state and federal constitutions," is stated to be "the inequality between the exemption and the apportionment provisions," in that the "property which is exempted is not included in the schedule of property to be valued," and "only a part of the property exempted is included," and "the part that is included is valued not as property is generally valued, but by applying fixed unit values, regardless of kind, character, condition, location, or true value." By way of elaboration, it is said that "validity can only attach to taxation systems which, notwithstanding the exemption provisions, insure equality in the burden by either providing a fair equivalent for the tax revenue to the municipalities which are deprived of their normal tax revenues, or by making the tax of statewide benefit to all;" and that the "tax revenue secured" by the statutes in question "is not for a statewide, general purpose, but is wholly for the municipalities' local purposes," and, such being the case, "unless a fair equivalent of tax revenue is insured to the municipalities which are deprived of their normal tax revenue by the exemption provisions of the statutes, then the constitutional requirement of uniformity and equality is not met, and the statutes should be condemned." Again, it is urged that, "if the result of the statute in question is a destruction of uniformity in taxation, the statute should be invalidated exactly as it would be if it provided for the assessment of the property in question in the first instance by a theoretical or arbitrary method instead of according to true value;" that "there can be no uniformity as required by the constitution unless the valuation of property results from the exercise of honest judgment and according to *ad valorem;*" and that "legislative action which attempts to substitute a fanciful theory of valuation, based upon capacity, for sound and firmly-established methods"— termed "arbitrary unit values"—"is just as invalid under the constitution as administrative action of the same kind."

The argument is that, "true value" of the physical property not being an element of the statutory formula, the apportionment thereby effected would not be just and equitable, and so would run counter to the constitutional provisions adverted to and "disregard the spirit and intent of the decision of this court" in *Hoboken* v. *Martin*, 123 *N. J. L.* 442. There, it was contended that there was an unlawful delegation of power to the Tax Commissioner; here, it is said that the statutes under review "do not furnish" the Commissioner "with a 'standard, plan or rule,' but, instead, fix ultimate valuations, leaving to the State Tax Commissioner only the task of making calculations." These apportionment provisions do not, we are told, take the category of "true legislation," since that term "implies the determination of standards and principles for the guidance of the administrative department of the government." In fine, it is maintained that, "if the result disturbs or may disturb equality in the burden of taxation, the statute is constitutionally objectionable," since "uniformity in taxing implies equality in the burden of taxation, and this equality of burden cannot exist without uniformity in all of the essential steps in taxation," and these statutes "should be condemned because of procedural departure from the usual method of valuation by local assessors."

The impositions laid upon the utilities by the statutes under review are not "property" taxes within the intendment of the cited provision of the state constitution, but rather excises or license fees levied on gross receipts for the exercise of corporate franchises and the privilege of using public streets and highways. *State Board of Assessors* v. *Central Railroad Co.*, 48 *N. J. L.* 146, 271; *Johnson* v. *Borough of Asbury Park*, 58 *Id.* 604; *affirmed*, 60 *Id.* 427; *North Jersey Street Railway Co.* v. *Jersey City*, 73 *Id.* 481; *affirmed*, 74 *Id.* 761; *Phillipsburg Railroad Co.* v. *Board of Assessors*, 82 *Id.* 49; *Bergen Aqueduct Co.* v. *State Board, &c.*, 95 *Id.* 486; *Salem and Pennsgrove Traction Co.* v. *State Board*, 97 *Id.* 386; *affirmed*, 98 *Id.* 570; *Eastern Pennsylvania Power Co.* v. *State Board, &c.*, 103 *Id.* 281; *Standard Underground Cable Co.* v. *Attorney-General*, 46 *N. J. Eq.* 270; *Patton* v. *Brady*, 184 *U. S.* 608; 22 *S. Ct.* 493; 46 *L. Ed.* 713; *New Jersey Bell*

*Telephone Co.* v. *State Board,* 280 *U. S.* 338; 74 *L. Ed.* 463. This constitutional direction lays no restraint upon the sovereign authority in the making of such exactions; and the exercise of the power is in nowise restricted, "save only by the need of conforming to that essential quality of taxation, that when a class of persons or things is selected for taxation, the tax must be imposed upon individuals of the class under a rule of uniformity." *State Board of Assessors* v. *Central Railroad Co., supra.* See, also, *North Jersey Street Railway Co.* v. *Jersey City, supra; Salem and Pennsgrove Traction Co.* v. *State Board, supra; Eastern Pennsylvania Power Co.* v. *State Board, &c., supra.*

Moreover, the issue here concerns the apportionment among the several municipalities of excise charges levied and collected by the state; and the principles governing the levying of taxes have no relation to their distribution by the sovereign. *State Board of Assessors* v. *Central Railroad Co., supra; Hoboken* v. *Martin, supra; Collingswood Sewerage Co.* v. *Collingswood,* 91 *N. J. L.* 20; *affirmed,* 92 *Id.* 509; *Oliver* v. *Washington Mills,* 93 *Mass.* 268; *Trenton* v. *New Jersey,* 262 *U. S.* 182; 43 *S. Ct.* 534; 67 *L. Ed.* 937; *Williams* v. *Baltimore,* 289 *U. S.* 36; 53 *S. Ct.* 431; 77 *L. Ed.* 1015. "Every system of taxation consists of two parts—one the levying of taxes, the imposition of taxes on persons or property, the other the assessment and collection of taxes. The first is a legislative function controlled by constitutional prescriptions; the other, the assessment and collection of taxes, is mere machinery by which the legislative purpose is effectuated." *Township of Bernards* v. *Allen,* 61 *N. J. L.* 228. The constitutional provision that property shall be assessed for taxes according to its true value, and by uniform rules, "relates only to the assessment of taxes, and in that respect it concerns only such equalization of the burdens of taxation as will result from the designation of the property which shall be the subjects of taxation, and the apportionment of the taxes thereon under general laws, by uniform rules and upon true valuations. The reasons which induced the adoption of this constitutional provision are deep-seated in principles of public policy. Its object was to secure to the people

of the state the equalization of taxation, so far as was practicable, by requiring the imposition of taxes on property by general laws, on the principle of uniformity in the subjects of taxation and in valuations." *Trustees of Public Schools v. City of Trenton,* 30 *N. J. Eq.* 667, 677. The "mere machinery" by which taxes shall be assessed and collected "is left to legislative discretion." *Kirkpatrick v. New Brunswick,* 40 *Id.* 46, 52; *affirmed, sub nom. Taxpayers' Protective Association v. Kirkpatrick,* 41 *Id.* 347. The phrase "uniform rules," in constitutional intendment, "does not refer to those regulations that pertain to the agencies and methods employed in the assessment and collection of taxes, but only to the basic rules for taxation—those that settle how the public burden is to be distributed, including the designation of the property that is to contribute, and the rate or ratio by which the taxes are to be laid and apportioned," and "the constitutional provision is satisfied by a uniformity that obtains without discrimination throughout a class of property set apart on reasonable grounds for separate treatment." *Central Railroad Co. v. State Board of Assessors,* 75 *N. J. L.* 120, 145; *affirmed, Ibid.* 771.

The power of taxation is an essential attribute of sovereignty. It has no limits except as imposed by the constitution (or irrepealable legislative contract); and, unless the legislation is plainly violative of a constitutional limitation, or outside the sphere of "governmental authority," it is not subject to judicial annulment. The wisdom or policy of such legislation beyond the range of the constitutional interdict is not a justiciable question. And there are no restraints upon the disposition of such revenue, if made for a proper governmental purpose. It is not within the province of the appellant municipalities to assail the distribution of these taxes because not in consonance with their concept of fairness and equality. "All taxes, whether levied for state, county or municipal purposes, are state taxes—they can be imposed by no other authority than that of the state. The state appropriates the proceeds to what purpose it sees fit; but however the proceeds may be appropriated, every tax is a state tax. * * * The power of apportionment is not limited or affected

by the constitution, and the judiciary has no control whatever over it." *State Board of Assessors* v. *Central Railroad Co., supra* (at *pp.* 277, 280).

A municipality is merely a political subdivision or department of the state. It is an agency created for the exercise, within the prescribed limits, of the governmental functions and powers of the state. It is but the creature of the state, and exists at its pleasure. As respects both its strictly governmental office and its municipal character for the conduct of local self-government, the Legislature is the exclusive source of its authority; and its continued corporate existence, as well as the scope of its powers, depends upon its will. Unless constitutionally secured, the municipality has no inherent right of self-government beyond the control of the state. *Public Service Electric, &c., Co.* v. *Camden*, 118 *N. J. L.* 245. See, also, *Van Cleve* v. *Passaic Valley Sewerage Commissioners*, 71 *Id.* 183. The state's authority over the rights and property of its municipalities is not restricted by the contract or due process clauses of the Federal Constitution. The state, "at its pleasure, may modify or withdraw all such powers, may take without compensation such property, hold it itself, or vest it in other agencies, expand or contract the territorial area, unite the whole or a part of it with another municipality, repeal the charter and destroy the corporation. All this may be done, conditionally or unconditionally, with or without the consent of the citizens, or even against their protest. In all these respects the state is supreme, and its legislative body, conforming its action to the State Constitution, may do as it will, unrestrained by any provision of the Constitution of the United States. * * * The power is in the state, and those who legislate for the state are alone responsible for any unjust or oppressive exercise of it." *Hunter* v. *Pittsburgh*, 207 *U. S.* 161; 28 *S. Ct.* 40; 52 *L. Ed.* 151. See, also, *Trenton* v. *New Jersey, supra; Worcester* v. *Worcester Consolidated Street Railway Co.,* 196 *U. S.* 539; 25 *S. Ct.* 327; 49 *L. Ed.* 591.

The contention is also made that the Legislature does not possess "the constitutional power to determine the value of property, whether for the purpose of establishing ratables for

taxation or for the apportionment of taxes, unless the actual value, of necessity, is fairly equivalent to that fixed by the legislation, such as money on deposit in bank or securities, where the nominal or face value is substantially identical with the actual value." This point is not well taken.

As declared in *Hoboken* v. *Martin, supra,* the Legislature "may apportion and distribute" these tax revenues "as it may see fit and determine." And it may entrust the effectuation of its declared policy to an administrative agency, if the authority of the latter be confined by established standards of action, and thereby it performs its essential legislative function. In such circumstances, the legislative agent exercises an authority purely administrative in character. *State Board of Milk Control* v. *Newark Milk Co.,* 118 *N. J. Eq.* 504. It is, of course, elementary that the legislative power may in a given case be exerted directly, unless for practical reasons the intervention of a fact-finding administrative instrumentality is requisite to the consummation of the legislative object. *Panama Refining Co.* v. *Ryan,* 293 *U. S.* 388; 55 *S. Ct.* 246; 79 *L. Ed.* 446. The constitution lays no restriction upon the inherent power of the legislature to provide for the disposition of such taxes by such formula as it may choose to effectuate its will.

It is also maintained under subdivision (c), *supra,* that as regards chapter 5 of the Laws of 1940, *supra,* "only street railway, traction, gas and electric light, heat and power *corporations* are selected as the taxpayer class," and that such "classification is illusory and invalid under the constitution," since "it is property that is to be classified, not the owners of property, and all similar property or property devoted to a similar use must be included in the classification to be valid," and it therefore "contravenes the constitutional requirement of uniformity and equality"—citing *State* v. *Mercer County Board of Taxation,* 118 *N. J. L.* 408. It is conceded that chapter 4 "does not offend the constitution in this respect, because the tax imposed by that act is upon persons, copartnerships, associations or corporations."

There is no occasion to consider this point. If it were sound, the tax itself would be invalid; and the levy is not

challenged by any of those upon whom it was laid. As stated, the taxes have been garnered; and this litigation concerns only their distribution. Compare *Read* v. *Board of Commissioners of Newark*, 103 *N. J. L.* 60.

Thus it is that the scheme of distribution provided by the legislature is not assailable upon the grounds advanced by appellants. That is a matter exclusively within the province of the lawmaking body, wholly free of constitutional restraint.

Secondly, it is urged that these enactments offend against the direction of article IV, section VII, *placitum* 4, of the State Constitution, that "every law shall embrace but one object, and that shall be expressed in the title." It is said that "the primary object of chapter 4 * * * was to establish the scheduled property and the unit values for the purpose of the apportionment of the franchise taxes" thereby imposed; and that the "only object expressed in the title is the imposition of the tax."

If the "leading" or general subject of a statute is fairly expressed in the title, the constitutional mandate is satisfied. The "object" of a law is not to be confused with its "product." The product may be "as diverse as the object requires and finds its expression in the terms of the enactment only." *Moore* v. *Burdett*, 62 *N. J. L.* 163. It is not requisite that the title be an abstract or synopsis of the contents of the statute. The title is a label, not an index. It gives expression to the object of the enactment, in the constitutional sense, "if it contain a mention of the subject-matter generally, together with a succinct indication of the legislation respecting it." *Mortland* v. *Christian*, 52 *Id.* 521. Its essential function is "to give notice of the effect of the legislation to one conversant with the existing state of the law;" and its validity "is not to be determined by nice distinctions of etymology or definition of words, but by the facts of the case and the history of the legislation." *Sawter* v. *Shoenthal*, 83 *Id.* 499. Where the subject of legislation is single, and is of a general character, all matters reasonably connected therewith, and appropriate to the achievement of the legislative object, may be embraced therein without infringing the constitutional interdict; and, by the same token, matters

cognate to that object are not required to be expressly mentioned in the title. The title comprehends, within the signification of this constitutional precept, all matters embodied in the statute germane to the subject of the title, and not excluded thereby. The general test of constitutional sufficiency in this behalf is whether the titular expression of the object of the statute is misleading. The criterion is whether the title is such that thereby the members of the legislature are given notice of the subject to which the act relates, and the public informed of the kind of legislation that is under consideration. And it is the settled rule that a statute will not be judicially declared inoperative and unenforceable on this ground unless it is palpably in contravention of the constitutional command. *Public Service Electric, &c., Co.* v. *Camden, supra.*

So viewed, the title of this statute is sufficient. The imposition of such excises presupposes a disposition of the revenue for some public purpose; and it is but fair to assume that the act making the levy will provide the means for the effectuation of the purpose.

As to chapter 5, the contention is made that its "primary and important object * * * was to establish scheduled property and unit values for the apportionment of the taxes imposed;" and that this object is not given expression in the title. It is also without substance.

The title states the object of the enactment to be "the taxation of the gross receipts" and "certain of the property" of specified utilities; and this likewise plainly connotes provision for the disbursement of the revenue to fulfill the ultimate purpose of the enactment.

And it is said that the foregoing chapter is also violative of this constitutional provision in that "it purports to impose two excise taxes, whereas, in fact, it imposes a franchise tax in the nature of a license tax, and a gross receipts tax in lieu of the taxation of personal property," and that "the inclusion in the statute of franchise taxes and gross receipts taxes, both of which are denominated excise taxes, results in intermixing in one and the same Act such things as have no proper relation to each other, under a title inappropriate for either." This, too, is lacking in merit.

These levies are interrelated to accomplish the general legislatives purpose. The terms "license" and "excise" are interchangeable, and in this behalf are used in contradistinction to "property." *Vide Phillipsburg Railroad Co.* v. *Board of Assessors, supra; North Jersey Street Railway Co.* v. *Jersey City, supra.* And the title is plainly expressive of the object in view.

Lastly, it is insisted that the enactments "contravene the constitutional separation of the legislative and executive functions," in that article IV, section VII, *placitum* 12, of the State Constitution "implies the requirement of an administrative officer to make assessments, whether the assessments are to establish ratables or valuations for the apportionment of taxes;" and that the legislation is deficient in that it "attempts to dispense with assessments by administrative assessors," and represents "legislative encroachment upon the executive department."

We have said sufficient to dispose of this point. The distribution of these taxes is a nondelegable legislative function; and the cited provision of the constitution has no application whatever to the exercise of this power.

The judgments are accordingly affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, DONGES, HEHER, PERSKIE, COLIE, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, THOMPSON, JJ. 14.

*For reversal*—None.