SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**Robert A. Verry v. Franklin Fire District No. 1 (A-77-15) (077495)**

**Argued March 27, 2017 -- Decided August 7, 2017**

**LaVECCHIA, J., writing for the Court.**

In this appeal the Court reviews a judgment requiring the release, pursuant to the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, of the constitution and bylaws of a volunteer fire company that is a member of a fire district established pursuant to N.J.S.A. 40A:14-70.

On February 28, 2013, plaintiff Robert A. Verry submitted a public records request to Franklin Fire District No. 1 (District), seeking the constitution and bylaws of the Millstone Valley Fire Department (MVFD), a volunteer fire company operating within the District. The District denied the request on the basis that it does not maintain such documents for its member companies. Verry filed a complaint with the Government Records Council (GRC).

The MVFD operated independently as a volunteer fire company until 1973, when it requested membership in the already-existing District. The District informed members of the MVFD that, in order to join the District, the volunteer company would be required to transfer title in all fire-fighting equipment to the District. Annually, the MVFD would submit a budget to the commissioners. Notwithstanding the MVFD's acceptance into the District through a resolution of the Township Council, the MVFD, as a member fire company operating within the District, annually enters into a contract with the District to provide firefighting services. Through that contract, the MVFD receives public funds to cover the housing and maintenance of firefighting equipment owned by the District, training for the MVFD's members, and the purchase of new equipment.

The GRC unanimously adopted the conclusion that the MVFD "serves a governmental function under the supervision and control of [the District]" and therefore "it is a public agency for purposes of OPRA." In an interim order, the GRC required the District to obtain the requested documents from the MVFD and to turn them over to Verry. The District moved for reconsideration. The MVFD also filed a brief in support of the reconsideration motion. The GRC denied reconsideration and reaffirmed its prior interim order.

The Appellate Division granted leave to appeal and, in an unpublished decision, affirmed the GRC's interim order, concluding that the MVFD is a public agency subject to OPRA. The panel held that the GRC did not misapply case law involving the "creation" and "governmental function" tests to identify whether the MVFD is a public agency subject to OPRA. The panel "agree[d] with the GRC that [the MVFD], at least since 1974, has become an instrumentality of the District and thus a public agency subject to OPRA."

The GRC stayed its interim order pending the District's motion for leave to appeal to this Court. On June 1, 2016, the Court granted the District's motion for leave to appeal and directly certified the entire matter, including the issues remanded by the Appellate Division. 226 N.J. 206.

**HELD**: The fire district, to which the OPRA request was made, is obliged to release such documents in its possession or to obtain them from a member volunteer fire company under its supervision and release them. OPRA demands such transparency and accountability of public agencies, and the fire district is undoubtedly a public agency subject to OPRA. The Court therefore affirms the judgment in that respect. However, to the extent the holding under review also concluded that the member volunteer fire company is a "public agency" subject directly and independently to OPRA requirements, the Court disagrees and modifies the judgment.

1. In enacting OPRA, the Legislature has declared that "government records shall be readily accessible for inspection, copying, or examination by the citizens of this State, with certain exceptions, for the protection of the public interest." N.J.S.A. 47:1A-1. OPRA's disclosure requirements apply to public agencies. The definition of

public agency includes "any political subdivision of the State or combination of political subdivisions, and any division, board, bureau, office, commission or other instrumentality within or created by a political subdivision of the State or combination of political subdivisions, and any independent authority, commission, instrumentality or agency created by a political subdivision or combination of political subdivisions." N.J.S.A. 47:1A-1.1. (pp. 10-15)

2. The Legislature granted to municipalities lacking a paid or partially paid fire department the power to create a fire district. N.J.S.A. 40A:14-70. Within the same statute, the Legislature specifies the exact nature of the entity that it authorizes a municipality to create and elaborates on the process of creating a fire district: "The district or each district shall be assigned a number and the commissioners thereof and their successors shall be a body corporate . . . ." Ibid. (emphasis added). The Legislature did not provide that the fire district being created would itself be a political subdivision. The additional words "and political subdivision," often used elsewhere in legislative authorizations, are not included in the authorizing language for a fire district. Indeed, the Legislature has enacted many other statutes authorizing the formation of an entity by another form of legislatively created entity, like a municipality or a county, to be both "a body corporate" and "a political subdivision." (pp. 15-18)

3. When established, a fire district is a creation of a municipality—which is undoubtedly a political subdivision— that utilizes authority available to it pursuant to N.J.S.A. 40A:14-70 to form a fire district. That makes the fire district an instrumentality of a political subdivision or multiple political subdivisions, as the case may be. However, the fire district itself is not a political subdivision. The Legislature did not designate it so. For OPRA disclosure-requirement purposes, as an instrumentality of a political subdivision, a fire district clearly meets the definition of public agency under the second sentence of OPRA's definition. OPRA provides that an "instrumentality within or created by a political subdivision" is considered a "public agency." N.J.S.A. 47:1A-1.1. As a result, a fire district is subject to OPRA and must respond to requests made under the statute. (pp. 18-20)

4. A member volunteer squad may be regarded as an instrumentality of a fire district. However, because the District itself is not a political subdivision, but rather the instrumentality of one, the volunteer company is only the instrumentality of an instrumentality. Although OPRA provides that an instrumentality of a political subdivision constitutes a public agency, it does not provide that an instrumentality of an instrumentality constitutes a public agency. See N.J.S.A. 47:1A-1.1. OPRA requires a direct connection to a political subdivision. The Court cannot conclude that the Legislature intended for a volunteer fire company to be considered a separate public agency for OPRA purposes. Nor does a contract establish the type of relationship that fits within the definition of public agency under OPRA. Because the District is an instrumentality of a political subdivision, it falls within the plain language of the statutory definition of public agency. By contrast, the MVFD is a non-profit association and, while it is supervised by the District, the volunteer company is not a public agency as defined by OPRA. (pp. 20-24)

5. The District, upon receiving a request for the constitution and bylaws of the MVFD, was obligated to provide access to those documents because they should have been on file with, or accessible to, the District pursuant to its authority to supervise the MVFD. It is not necessary to resolve whether the MVFD enjoys a relationship as a member volunteer squad of the District under N.J.S.A. 40A:14-70.1(a) or if the District merely supervises the volunteer squad pursuant to a contractual relationship under N.J.S.A. 40A:14-70.1(b). Under either provision, the District supervises the MVFD and has certain responsibilities to provide public access to records relating to that supervision. The Court therefore affirms the judgment of the Appellate Division that upheld the GRC order. To the extent that the judgment included a conclusion that the MVFD was a public agency that was itself subject to OPRA demands, the Court disapproves of that analysis and modifies the judgment accordingly. (pp. 24-26)

The judgment of the Appellate Division is **AFFIRMED AS MODIFIED**.

**JUSTICE ALBIN, DISSENTING IN PART AND CONCURRING IN PART**, finds that a fire district retains its nature as a political subdivision despite the label or lack of label given it. In Justice Albin's view, the District is a "political subdivision" of the State and the MVFD is an "instrumentality" of the District that meets OPRA's definition of "public agency," and therefore its records are subject to scrutiny. Even if the District were an instrumentality of the municipality, the MVFD should be deemed the same instrumentality for OPRA purposes.

**JUSTICES PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE LaVECCHIA's opinion. JUSTICE ALBIN filed a separate, partially dissenting and partially concurring opinion, in which CHIEF JUSTICE RABNER joins.**

2

ROBERT A. VERRY,

      Respondent,

        v.

FRANKLIN FIRE DISTRICT NO. 1,

      Appellant,

    and

MILLSTONE VALLEY FIRE DEPARTMENT,

      Respondent.

        Argued March 27, 2017 – Decided August 7, 2017

        On appeal from the Superior Court, Appellate Division.

        Dominic P. DiYanni argued the cause for appellant (Eric M. Bernstein & Associates, attorneys).

        Aldo J. Russo argued the cause for respondent Millstone Valley Fire Department (Lamb Kretzer, attorneys).

        Walter M. Luers argued the cause for respondent Robert A. Verry (Law Offices of Walter M. Luers, attorneys).

        Raymond R. Chance, III, Assistant Attorney General, argued the cause for respondent Government Records Council (Christopher S. Porrino, Attorney General, attorney; Raymond R. Chance, III, of counsel, and Debra A. Allen, Deputy Attorney General, on the brief).

1

Edward L. Barocas argued the cause for amicus curiae American Civil Liberties Union of New Jersey (Edward L. Barocas, Legal Director, attorney; Edward L. Barocas, Iris Bromberg and Jeanne LoCicero, on the brief).

JUSTICE LaVECCHIA delivered the opinion of the Court.

In this appeal we review a judgment requiring the release, pursuant to the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, of the constitution and bylaws of a volunteer fire company that is a member of a fire district established pursuant to N.J.S.A. 40A:14-70. We hold that the fire district, to which the OPRA request was made, is obliged to release such documents in its possession or to obtain them from a member volunteer fire company under its supervision and release them. OPRA demands such transparency and accountability of public agencies, and the fire district is undoubtedly a public agency subject to OPRA. We therefore affirm the judgment in that respect. However, to the extent the holding under review also concluded that the member volunteer fire company is a "public agency" subject directly and independently to OPRA requirements, we disagree and modify for the reasons expressed herein.

I.

On February 28, 2013, plaintiff Robert A. Verry submitted a public records request to Franklin Fire District No. 1 (District), seeking disclosure of the constitution and bylaws of

2

the Millstone Valley Fire Department (MVFD), a volunteer fire company operating within the District. The District denied the request on the basis that it does not maintain such documents for its member companies. Verry filed a complaint with the Government Records Council (GRC), which created the record on which we review this matter.

A.

By way of background, the MVFD is a non-profit association incorporated on March 12, 1929 with the objective "to protect life and property from fire, by the usual means of fire companies." The MVFD operated independently as a volunteer fire company in Franklin Township for decades until 1973, when it requested membership in the already-existing District. The evidence in the record regarding the relationship between the MVFD and the District is contained in minutes from the 1973 meetings of the commissioners of the District and, of more recent vintage, contracts that have been entered into between the two.

Members of the MVFD first expressed interest in joining the District at a meeting of the District's commissioners held March 26, 1973. The District contacted the township attorney to discuss the legality of the proposed merger, and a special meeting was held to explore the proposal on April 19, 1973. The District informed members of the MVFD that, in order to join the

3

District, the volunteer company would be required to transfer title in all fire-fighting vehicles and equipment to the District.  Annually, the MVFD would submit a budget to the commissioners.  The size of the District's commission would not change from its five-person composition, but members of the MVFD would be eligible to run for a commission seat.

The MVFD submitted vehicle and equipment lists to the District at a May 21, 1973 regular meeting and also reported that it would contact the township attorney to inquire as to the steps necessary to join the District.  Several months later, at the District's regular meeting on November 26, 1973, it was reported that "Millstone Valley [had] been officially accepted in Fire District 1 by virtue of a Township Council resolution" dated October 25, 1973.  There is no statutory reference explaining the "official acceptance" into the District.  The MVFD has been partially funded by the District since 1974.

Notwithstanding the MVFD's acceptance into the District through a resolution of the Township Council, the MVFD, as a member fire company operating within the District, annually enters into a contract with the District to provide firefighting services to the public.  Through that contract, the MVFD receives public funds to cover the housing and maintenance of firefighting equipment owned by the District, training for the MVFD's members, and the purchase of new equipment.

4

B.

On February 28, 2013, Verry emailed an OPRA request to the District, seeking disclosure of the MVFD's constitution and bylaws in effect from 2007 through 2013. The next day, Verry received an email response from the District's only office employee, Dawn Cuddy, on behalf of the District's elected Records Custodian, Timothy Szymborski. The response stated that "there are no responsive records to [Verry's] request that the [D]istrict maintains." Verry replied, asserting that because the MVFD is under the statutory supervision and control of the District, the Records Custodian was obliged to obtain and produce responsive records regardless of whether the District regularly maintains them. Cuddy sent a follow-up email on March 11, 2013, informing Verry that the District does not consider the requested documents to be public records under OPRA and denying his request.

Verry filed a denial-of-access complaint with the GRC, seeking an order compelling the District's Records Custodian to release records responsive to his request. In opposition, the Records Custodian filed a Statement of Information Form and a certification that the District's files had been searched prior to the denial to confirm that the MVFD's constitution and bylaws were not in the District's possession. Further, Szymborski also certified that, in his capacity as Commissioner of the District

5

from 1986 to 1988 and from 2006 to the present, he was not aware that the District had ever maintained records of its member companies' internal bylaws or constitutions. Szymborski added that he requested the documents from the MVFD and that his request was denied. Finally, addressing the argument that the District was required to obtain the documents because, under N.J.S.A. 40A:14-70.1(b), volunteer fire companies such as the MVFD operate under the "supervision and control" of the fire district, Szymborski stated:

> Although the requestor did cite [N.J.S.A. 40A:14-70.1(b)] . . . that statute does not require or mandate that the Fire District maintain a copy of a member Fire Department or Fire Company's Constitution and By-Laws. Nowhere could I find such a rule, regulation, statute, policy, or the like which required or mandated such a thing. Even the District's Attorney, whom I consulted with about the statute, was also unable to locate such a [requirement]. I understand that the member Companies/Departments are under the supervision and control of the District but that does not require or mandate that their own internal By-Laws and Constitution be provided to the District. . . . The member Companies and Departments can adopt their own internal rules, regulations, By-Laws and Constitution which is their own document and not a Fire District wide document.

Verry's reply disputed the District's legal position.

The GRC considered the parties' submissions and its Executive Director's proposed Findings and Recommendations at a public meeting on April 29, 2014. The Executive Director's

6

proposed findings addressed a threshold issue, not thoroughly briefed by the parties:  whether the MVFD is a "public agency" for purposes of OPRA.  The findings stated, in relevant part:

> Notwithstanding that MVFD was likely created by the volunteer membership, [it] is clear that member companies within a fire district exercise a government duty and are under the supervision and control of the district, which is clearly a "public agency."  N.J.S.A. 40A:14-70.1.  In essence, although the creation of a volunteer fire company is reserved only for the membership, said company organizing within a fire district is expressly required to apply to the district.

The proposed findings concluded that the MVFD "serves a governmental function under the supervision and control of [the District]" and therefore "it is a public agency for purposes of OPRA."

The GRC unanimously adopted the Findings and Recommendations of its Executive Director, and in an interim order, dated May 1, 2014, required the District to obtain the requested documents from the MVFD and to turn them over to Verry.  To the extent individuals at the MVFD refused to provide the documents, the GRC ordered those individuals to identify themselves and to provide a lawful basis for withholding the records.  The GRC deferred consideration of whether Szymborski knowingly and willfully violated OPRA and whether Verry was a prevailing party under the statute.

7

The District moved for reconsideration, arguing that the GRC had misapplied the "creation test" established in Fair Share Housing Center, Inc. v. New Jersey State League of Municipalities, 207 N.J. 489 (2011), to address the scope of OPRA's coverage. The MVFD also filed a brief in support of the reconsideration motion, arguing that, in addition to its firefighting functions, the MVFD operates as a social organization and that subjecting it to the burden of OPRA compliance would dissuade future members from joining. The MVFD urged the GRC, should it sustain its interim order finding the volunteer department to be subject to OPRA, to permit redaction of information relating to its social activities. The GRC denied reconsideration and reaffirmed its prior interim order.

The District sought leave to appeal to the Appellate Division and also sought and obtained a stay of the GRC's order pending appeal. On April 16, 2015, the Appellate Division granted leave to appeal and ordered the parties to address, in particular, "whether [Paff v. New Jersey State Firemen's Ass'n], 431 N.J. Super. 278 (App. Div. 2013), or any of the analysis in that opinion, bears upon the issue in this appeal." Following oral argument, the panel directed that the MVFD be joined as a party.

In an unpublished decision issued March 15, 2016, the Appellate Division affirmed the GRC's interim order, concluding

8

that the MVFD is a public agency subject to OPRA. The panel held that the GRC did not misapply case law involving the "creation" and "governmental function" tests to identify whether the MVFD is a public agency subject to OPRA. In particular, the panel rejected the District's reliance on a prior decision of the GRC, Carrow v. Borough of Newfield, in which a volunteer fire company was found not to be a public agency. The panel explained that, in Carrow, a fire district was not involved; rather, the volunteer company contracted directly with a municipality. By contrast, based on the MVFD's membership in the District by virtue of a township resolution, the panel "agree[d] with the GRC that [the MVFD], at least since 1974, has become an instrumentality of the District and thus a public agency subject to OPRA," (citing N.J. State Firemen's Ass'n, supra, 431 N.J. Super. at 289-90).

The Appellate Division did not reach whether the MVFD should be permitted to withhold records unrelated to its governmental function of firefighting, noting that the interim order left open the possibility that the MVFD might come forward with "a lawful basis for not providing" the requested records, such as an OPRA exemption. The panel remanded the matter for further proceedings before the GRC.

The GRC stayed its interim order pending the District's motion for leave to appeal to this Court. On June 1, 2016, we

9

granted the District's motion for leave to appeal and directly certified the entire matter, including the issues remanded by the Appellate Division. 226 N.J. 206. We thereafter granted motions to expand the record on appeal to include the parties' appellate division briefs and appendices, to allow the MVFD to participate, and to allow the American Civil Liberties Union of New Jersey (ACLU-NJ) to participate as amicus curiae.

## II.

### A.

In enacting OPRA, the Legislature has declared that "government records shall be readily accessible for inspection, copying, or examination by the citizens of this State, with certain exceptions, for the protection of the public interest." N.J.S.A. 47:1A-1. We have frequently explained the import of OPRA's broad public policy in favor of public access to government records, which serves to "maximize public knowledge about public affairs in order to ensure an informed citizenry and to minimize the evils inherent in a secluded process." Mason v. City of Hoboken, 196 N.J. 51, 64-65 (2008) (quoting Asbury Park Press v. Ocean Cty. Prosecutor's Office, 374 N.J. Super. 312, 329 (Law Div. 2004)).

OPRA's disclosure requirements apply to public agencies. OPRA defines "public agency" or "agency" as:

> [A]ny of the principal departments in the Executive Branch of State Government, and any division, board, bureau, office, commission or other instrumentality within or created by such department; the Legislature of the State and any office, board, bureau or commission within or created by the Legislative Branch; and any independent State authority, commission, instrumentality or agency. The terms also mean any political subdivision of the State or combination of political subdivisions, and any division, board, bureau, office, commission or other instrumentality within or created by a political subdivision of the State or combination of political subdivisions, and any independent authority, commission, instrumentality or agency created by a political subdivision or combination of political subdivisions.
>
> [N.J.S.A. 47:1A-1.1.]

This appeal requires application of that statutory definition. In matters of statutory interpretation, our review is de novo. Saccone v. Bd. of Trs. of Police & Firemen's Ret. Sys., 219 N.J. 369, 380 (2014) (noting that interpretation of statute is "question of law subject to de novo review" on appeal). The language of the statute that defines "public agency" for OPRA purposes is paramount in this dispute.

The above-quoted definition of public agency defines the term in two sentences addressing distinct categories of public agencies. The first sentence captures a group of public agencies in the Executive and Legislative Branches of State government, including subparts to and creations of the Executive and Legislative branches, as well as various types of

11

independent state entities.  The case before us does not implicate that first part of the public agency definition.

The second sentence of the definition is the pertinent section for present purposes.  To reiterate, that sentence designates certain other entities as public agencies subject to OPRA, specifically political subdivisions of the State and bodies sharing a basic connection to those political subdivisions:

> The terms also mean any political subdivision of the State or combination of political subdivisions, and any division, board, bureau, office, commission or other instrumentality within or created by a political subdivision of the State or combination of political subdivisions, and any independent authority, commission, instrumentality or agency created by a political subdivision or combination of political subdivisions.
>
> [N.J.S.A. 47:1A-1.1.]

The question before us is whether the request to the District sought records of a public agency as defined in this latter portion of the statutory definition.

B.

1.

The GRC, Appellate Division, and the parties all focus on the volunteer fire squad when addressing whether the requested documents should be turned over.  We briefly summarize the

12

parties' arguments on the application of the term "public agency" in this matter.

The District argues that the proper test to determine whether an entity is a "public agency" under OPRA should begin with an examination of the "formation, structure, and function" of the entity. The District argues that the MVFD was created as a non-profit entity years before joining the District, that its contract with the District relates only to "prevention and extinguishment of fires and the regulation of fire hazards," and that the public funds it receives support only that function. The District emphasizes that its contract with the MVFD allows the MVFD to regulate its own internal affairs, such as the appointment of its fire chief, without interference by the District. In addition, the District maintains that New Jersey State Firemen's Ass'n, supra, 431 N.J. Super. at 287-89, was misapplied in this matter and that the earlier GRC decision in Carrow was improperly distinguished.

The MVFD joins in the arguments of the District.

2.

Verry first emphasizes OPRA's language generally mandating broad construction of its provisions in favor of the right of access, and he adds that the definition of public agency in N.J.S.A. 47:1A-1.1 is itself expansive. Second, Verry maintains that, under New Jersey State Firemen's Ass'n, supra, 431 N.J.

13

Super. at 287-89, as well as other OPRA case law, the MVFD qualifies as a public agency under OPRA because it is an instrumentality of the District serving a governmental function. Verry notes that "no fire company can lawfully operate in a New Jersey fire district unless and until it is authorized by the fire district pursuant to N.J.S.A. 40A:14-70.1(a)," and he contends that, therefore, the MVFD performs a "governmental function" under the District's "supervision and control."

3.

The GRC filed a brief in support of its decision, which, it contends, reached the correct result, is entitled to deference, and should be upheld. The GRC explains that it regards the "fact-sensitive inquiry" required in New Jersey State Firemen's Ass'n, supra, 431 N.J. Super. at 288-89, which focuses on an entity's "formation, structure, and function," to be the dispositive test, and it asserts that its findings in this matter are consistent with that test.

4.

Amicus ACLU-NJ argues that the MVFD is a public agency under OPRA because it is an instrumentality controlled by the state and it carries out a traditional governmental function. The ACLU-NJ quotes portions of the agreement between the District and the MVFD to demonstrate the extent to which government -- in the form of the District -- ultimately controls

14

the MVFD.  Amicus also emphasizes that oversight of the MVFD, through access to its records, is important due to the essential government function served by the fire company and this state's strong public policy in favor of open government.

## III.

In order to unravel the public access to information issue before us under OPRA, it is necessary to begin with an understanding of the nature of the entities at the center of this dispute and how they fit within OPRA's definition of public agency.  We turn first to the District, for that is the entity to which Verry made his request.  The nature of the District and how it fits into OPRA's structure is rather straightforward.

## A.

The Legislature granted to municipalities lacking a paid or partially paid fire department the power to create a fire district.  N.J.S.A. 40A:14-70.  In such municipalities, upon application of the voters and following a hearing,

> [i]f the governing body decides that the designation of a fire district is appropriate, it, by ordinance, shall designate a territorial location or locations for use as a fire district or fire districts and, by resolution, provide for the election of a board of fire commissioners for the district or each district, to consist of five persons, residents therein, and specify the date, time and place for the election of the first board.
>
> [Ibid.]

15

Within the same statute, the Legislature specifies the exact nature of the entity that it authorizes a municipality to create and elaborates on the process of creating a fire district:

> The district or each district shall be assigned a number and the commissioners thereof and their successors <u>shall be a body corporate</u> . . . . <u>The said body corporate</u> shall have the power to acquire, hold, lease, sell or otherwise convey in its corporate name such real and personal property as the purposes of the corporation shall require. . . . <u>Said body corporate</u> may adopt and use a corporate seal, sue or be sued and shall have such powers, duties and functions as are usual and necessary for said purposes.
>
> [<u>Ibid.</u> (emphases added).]

No doubt the Legislature, in authorizing a municipality or municipalities to choose to take action culminating in the creation of this type of legislatively authorized body corporate, conferred significant powers on a fire district. Those powers include the ability to hold annual elections for members of the board of commissioners of the fire district, <u>N.J.S.A.</u> 40A:14-72; the power to create its own budget, <u>N.J.S.A.</u> 40A:14-78.1; and the capability to issue bonds and notes in anticipation of bonds, <u>N.J.S.A.</u> 40A:14-86, -86.1. However, in granting municipalities the power to create a fire district, the Legislature did not provide that the fire district being created would itself be a political subdivision. See <u>Murray v.</u>

16

Plainfield Rescue Squad, 210 N.J. 581, 592 (2012) ("It is not our function to rewrite a plainly written statute or to presume that the Legislature meant something other than what it conveyed in its clearly expressed language.").

Although a municipality is a political subdivision and has long been understood as such, see, e.g., City of Jersey City v. Martin, 126 N.J.L. 353, 361 (E. & A. 1941), the language used by the Legislature to authorize the creation of a fire district establishes the fire district as "a body corporate." The additional words "and political subdivision," often used elsewhere in legislative authorizations, are not included in the authorizing language for a fire district.

Indeed, the Legislature has enacted many other statutes authorizing the formation of an entity by another form of legislatively created entity, like a municipality or a county, to be both "a body corporate" and "a political subdivision." By way of example, for the creation of county or municipal parking authorities, the Legislature has provided that, "[t]he governing body of any county or municipality may, by resolution or ordinance, as appropriate, create a public body corporate and politic and a political subdivision of the State to be known as the 'Parking Authority of the [county or municipality]." N.J.S.A. 40:11A-4 (emphases added). Similarly, for Beach Erosion Control Districts, the Legislature has provided that,

17

"[e]very Beach Erosion Control District shall be <u>a public body politic and corporate</u>, constituting <u>a political subdivision of the State</u>." <u>N.J.S.A.</u> 40:68-40 (emphases added).[1]

The Legislature did not confer "political subdivision" status on a fire district, however. Where the Legislature has "pointedly omitted" a term from an enactment, we cannot presume to write that term into the statute. See <u>DiProspero v. Penn</u>, 183 <u>N.J.</u> 477, 492 (2005) (quoting <u>Craster v. Bd. of Comm'rs of Newark</u>, 9 <u>N.J.</u> 225, 230 (1952)). When established, a fire district is a creation of a municipality -- which is undoubtedly a political subdivision[2] -- that utilizes authority available to

---

[1] By way of further examples, the Legislature has expressly declared the following, upon their formation, to be political subdivisions: port authorities, <u>N.J.S.A</u> 40:68A-7 ("Every port authority shall be a public body politic and corporate constituting a political subdivision of the State . . . ."); solid waste management authorities, <u>N.J.S.A.</u> 40:66A-38 ("Every solid waste management authority shall be a public body politic and corporate constituting a political subdivision of the State . . . ."); environmental services authorities, <u>N.J.S.A.</u> 40:66A-7 ("Every incinerator or environmental services authority shall be a public body politic and corporate constituting a political subdivision of the State . . . ."); sewerage authorities, <u>N.J.S.A.</u> 40:14A-7 ("Every sewerage authority shall be a public body politic and corporate constituting a political subdivision of the State . . . ."); and pollution control authorities, <u>N.J.S.A.</u> 40:37C-4(a) ("Any county may create an authority under the provisions of this act which shall be a public body corporate and politic and a political subdivision of the State . . . .").

[2] Municipal corporations derive their powers from the Legislature, as described in our Constitution. <u>N.J. Const.</u> art. IV, § 7, ¶ 11; see <u>Wagner v. Newark</u>, 24 <u>N.J.</u> 467, 474 (1957) (Vanderbilt, C.J.) (collecting and explaining cases that establish, as "fundamental in our law[,] that there is no

18

it pursuant to N.J.S.A. 40A:14-70 to form a fire district. That makes the fire district an instrumentality of a political subdivision or multiple political subdivisions, as the case may be. It is an entity "used to achieve an end or purpose." See League of Municipalities, supra, 207 N.J. at 503 (applying generally accepted meaning of "instrumentality" for purposes of OPRA). When created by a municipality, a fire district aids the municipality in achieving the purpose of firefighting and fire hazard protection for all or a portion of the municipality's geographic region. However, the fire district itself is not a political subdivision. The Legislature did not designate it so.

For OPRA disclosure-requirement purposes, as an instrumentality of a political subdivision, a fire district clearly meets the definition of public agency under the second sentence of OPRA's definition. As quoted earlier, OPRA provides that an "instrumentality within or created by a political subdivision" is considered a "public agency." N.J.S.A. 47:1A-1.1. As a result, a fire district is subject to OPRA and must respond to requests made under the statute.

B.

_____

inherent right of local self-government beyond the control of the State" and that political power flows to municipalities as "creations of the State, limited in their powers and capable of exercising only those powers of government granted to them by the Legislature"); cf. League of Municipalities, supra, 207 N.J. at 504 (referring to municipalities as political subdivisions).

19

We next consider whether the MVFD is a public agency under OPRA. That the MVFD is a member volunteer company of the District is conceded by all parties; however, the precise import of that membership is a point of disagreement. The working relationship between the District and the MVFD has apparently been characterized by a degree of informality. On the one hand, the District meeting minutes from 1973 reflect that the then-existing volunteer firefighting squad petitioned to become part of the District. On the other hand, the annual agreements signed by the District and the MVFD suggest that their relationship has recently been a contractual one. There may not have been a need previously to clarify the nature of the relationship. That said, the pertinent statute addressing relationships between a fire district and volunteer squads permits two specific types of relationships.

N.J.S.A. 40A:14-70.1 permits newly formed volunteer fire companies to be created within a fire district; it also permits a contractual relationship between a fire district and a volunteer squad:

> a. Any persons desiring to form a volunteer fire company to be located within or otherwise servicing the area encompassing a fire district or other type of volunteer organization which has as its objective the prevention of fires or regulation of fire hazards to life and property therein shall first present to the board of fire commissioners a written application for the

20

organization of such company. Such application shall be in the form of a duly verified petition signed by them stating the kind of company which they desire to organize, the name or title thereof, the number and names of the proposed members thereof, and their places of residence. The board of fire commissioners, after considering such application and approving the members of the proposed company, may by resolution grant the petition and constitute such applicants a volunteer fire company of the district.

b. The board of fire commissioners of a fire district not having a paid or part-paid fire department and force may contract with a volunteer fire company or companies for the purpose of extinguishing fires, upon those terms and conditions as shall be deemed proper. The members of the company shall be under the supervision and control of the board of fire commissioners and in performing fire duty shall be deemed to be exercising a governmental function; however, the appointment or election of the chief of the volunteer fire company shall remain the prerogative of the membership of the fire company as set forth in the company's certificate of incorporation or bylaws.

[N.J.S.A. 40A:14-70.1.]

The key inquiry here is whether, by virtue of N.J.S.A. 40A:14-70.1, the MVFD is a "division, board, bureau, office, commission or other instrumentality within or created by a political subdivision of the State . . . [or an] independent authority, commission, instrumentality or agency created by a political subdivision." N.J.S.A. 47:1A-1.1. As a member volunteer squad under subsection (a) of N.J.S.A. 40A:14-70.1, because it aids in fulfilling the greater fire district's

21

purpose, a volunteer squad may be regarded as an instrumentality of a fire district.  However, because the District itself is not a political subdivision, but rather the instrumentality of one, the volunteer company is only the instrumentality of an instrumentality.  Although OPRA provides that an instrumentality of a political subdivision constitutes a public agency, it does not provide that an instrumentality of an instrumentality constitutes a public agency.  See N.J.S.A. 47:1A-1.1.  OPRA requires a direct connection to a political subdivision.[3]  Therefore, we cannot conclude from the language used by the Legislature that it intended for a volunteer fire company to be considered a separate public agency for OPRA purposes under N.J.S.A. 40A:14-70.1(a).

Nor does a contract under N.J.S.A. 40A:14-70.1(b) establish the type of relationship that fits within the second sentence of the definition of public agency under OPRA.  We discern no

---

[3]  Of course, as the dissent observes, municipalities may contract directly with a volunteer fire company rather than creating a fire district.  N.J.S.A. 40A:14-68.  Although such a company would meet OPRA's definition of a public agency, unlike the MVFD, that outcome would result from the company's direct relationship with a municipality -- a political subdivision. The various statutes governing municipal fire services have been enacted by the Legislature over the course of many years and allow for a number of permissible configurations for those services.  Unlike the dissent, we recognize that we are constrained by plain statutory language that does not designate fire districts as political subdivisions.  Any alteration of that language must come from the Legislature.

22

evidence that the Legislature intended for an entity under a contractual relationship with an instrumentality of a political subdivision to become a public agency for OPRA purposes. Thus, no matter which category of N.J.S.A. 40A:14-70.1 might apply to the MVFD due to its relationship with the District, neither supports a conclusion that the MVFD itself has become a public agency under OPRA, subject directly and independently to OPRA demands.

C.

In reaching the conclusion that the District is a public agency subject to OPRA but that the MVFD is not, we do not rely on the reasoning in New Jersey State Firemen's Ass'n, supra, 431 N.J. Super. at 287-89, which is distinguishable from the instant matter. The New Jersey State Firemen's Association, whose records were sought under OPRA in that matter, was itself a creation of the State Legislature. See N.J.S.A. 43:17-41. Therefore, it is an entity that squarely fits under OPRA's parameters for a State agency under part of the first definitional sentence: "any office, board, bureau or commission within or created by the Legislative Branch; and any independent State authority, commission, instrumentality or agency." N.J.S.A. 47:1A-1.1.

Similarly, we find distinguishable the analysis in Times of Trenton Publishing Corp. v. Lafayette Yard Community Development

Corp., 183 N.J. 519 (2005), where we considered an entity that was controlled and directed by governing members of a municipal political subdivision, the City of Trenton.  As we explained in Lafayette Yard, supra, in that case "the Mayor and City Council [had] absolute control over the membership of the Board of Lafayette Yard and . . . the Corporation could only have been 'created' with their approval."  183 N.J. at 535.  Nothing in our opinion today alters our conclusion that such an entity, controlled and created with the approval of a political subdivision, is itself a public agency under OPRA.

To the extent our prior decisions have discussed "creation" or "governmental-function" tests when demarcating the boundaries of what qualifies as a public agency, see, e.g., League of Municipalities, supra, 207 N.J. at 507, such tests are useful only insomuch as they effectuate application of the statutory language.  Because the District is an instrumentality of a political subdivision, it falls within the plain language of the statutory definition of public agency.  By contrast, the MVFD is a non-profit association and, while it is supervised by the District, the volunteer company is not a public agency as defined by OPRA.

IV.

Having clarified the applicability of OPRA to the parties, we turn next to examine the specific OPRA request submitted in

24

this case.  We conclude that the District, upon receiving a request for the constitution and bylaws of the MVFD, was obligated to provide access to those documents because the requested documents should have been on file with, or accessible to, the District pursuant to its authority to supervise the MVFD.

While we do not wish to be overly formalistic in drawing lines between the two types of relationships that the MVFD might actually have with the District, neither do we wish to overextend the relationship between them.  We need not resolve whether the MVFD enjoys a relationship as a member volunteer squad of the District under N.J.S.A. 40A:14-70.1(a) or if the District merely supervises the volunteer squad pursuant to a contractual relationship under N.J.S.A. 40A:14-70.1(b).  Under either statutory provision, the District supervises the MVFD and has certain responsibilities under OPRA to provide public access to records relating to that supervision.  Thus, even if the MVFD is under fire-district supervision and control to the more limited extent applicable to companies contracting with fire districts under N.J.S.A. 40A:14-70.1(b), such supervision still requires integration with obligations imposed under the volunteer fire company's constitution and bylaws:

> The members of the company shall be under the supervision and control of the board of fire commissioners and in performing fire duty

25

> shall be deemed to be exercising a governmental function; however, the appointment or election of the chief of the volunteer fire company shall remain the prerogative of the membership of the fire company as set forth in the company's certificate of incorporation or bylaws.
>
> [N.J.S.A. 40A:14-70.1(b).]

In order for a fire district's commissioners to perform the oversight function expected by the legislative mandate, a fire district must have authority to review basic documents relating to the internal organization and functioning of volunteer squads working with that district. In this instance, the documents requested from the MVFD must be either on file with the District or subject to the District's demand for production. As such, they are documents necessary to the District's performance of its responsibilities and properly were ordered by the GRC to be produced and provided to Verry.

We therefore affirm the judgment of the Appellate Division that upheld the GRC order. To the extent that the judgment included a conclusion that the MVFD was a public agency that was itself subject to OPRA demands, separate and apart from the District, we disapprove of that analysis and modify the judgment accordingly.

V.

As modified, the judgment of the Appellate Division is affirmed.

26

JUSTICES PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE LaVECCHIA's opinion.  JUSTICE ALBIN filed a separate, partially dissenting and partially concurring opinion, in which CHIEF JUSTICE RABNER joins.

ROBERT A. VERRY,

  Respondent,

   v.

FRANKLIN FIRE DISTRICT NO. 1,

  Appellant,

   and

MILLSTONE VALLEY FIRE DEPARTMENT,

  Respondent.

  JUSTICE ALBIN, dissenting in part and concurring in part.

  The majority has taken the wrong path to get to the right destination, but that path may lead in the future to the withholding of important documents that belong in the public realm.  I concur in the outcome of this case:  the release of the Millstone Valley Fire Department's constitution and bylaws, which are clearly public records open to inspection.  I do not agree, however, with the majority's conclusion that the Millstone Valley Fire Department -- or a similar volunteer fire department that is part of a fire district -- is not a "public agency" subject to New Jersey Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13.

  To reach its conclusion, the majority reverses sound

1

opinions rendered by the Government Records Council and the Appellate Division and parses the language of OPRA in a way that will lead to absurd results that the Legislature could not have intended. Under the majority's interpretation, volunteer fire companies contracting directly with a municipality are subject to OPRA, but the same fire companies that are members of -- or contract with -- an independent fire district are not. A sensible reading of OPRA does not compel that arbitrary distinction.

Unlike the majority, I believe that the Franklin Fire District No. 1 is a "political subdivision" of the State and the Millstone Valley Fire Department is an "instrumentality" of the District. For that reason, the Fire Department meets OPRA's definition of "public agency," and therefore its records are subject to public scrutiny. Accordingly, I respectfully dissent.

I.

The term political subdivision, though not defined in our State Constitution or any statute, has a somewhat elastic meaning. A political subdivision "is an agency created for the exercise, within the prescribed limits, of the governmental functions and powers of the [S]tate." City of Jersey City v. Martin, 126 N.J.L. 353, 361 (E. & A. 1941); see also Black's Law Dictionary 1277 (9th ed. 2009) (stating that political

2

subdivision is "[a] division of a state that exists primarily to discharge some function of local government").

By that definition, according to the majority, municipalities are political subdivisions, even though the Legislature does not designate municipalities as such by statute. The majority acknowledges that political subdivisions include Beach Erosion Control Districts, N.J.S.A. 40:68-40; county and municipal parking authorities, N.J.S.A. 40:11A-4; sewerage authorities, N.J.S.A. 40:14A-7; solid waste management authorities, N.J.S.A. 40:66A-38; and pollution control financing authorities, N.J.S.A. 40:37C-4(a)-(b), to name a few. Ante at ___ (slip op. at 18 n.1). Those districts and authorities are political subdivisions, says the majority, because the Legislature has given them the name political subdivision. Presumably, the Legislature gives the name political subdivision only to those entities that possess the attributes of one.

The Franklin Fire District No. 1 possesses every characteristic of a political subdivision, except the name. Fire districts are creatures of statute. N.J.S.A. 40A:14-70. On application of the voters, the governing body of a municipality may pass an ordinance establishing a fire district as a "body corporate" with "the power to acquire, hold, lease, sell or otherwise convey . . . real and personal property." Ibid. The voters of a municipality elect the board of fire

3

commissioners, see ibid.; see also N.J.S.A. 40A:14-72, and determine by ballot "the amount of money to be raised for the ensuing year" for the fire district, N.J.S.A. 40A:14-72; see also N.J.S.A. 40A:14-84.  The fire district may borrow money "for current expenses and necessary repairs to fire apparatus and fire houses," N.J.S.A. 40A:14-80, and taxes are separately assessed on real property in the municipality to support the fire district, N.J.S.A. 40A:14-79.  Last, the fire district's commissioners have the same "powers, duties and functions" as a municipality "relating to the prevention and extinguishment of fires and the regulation of fire hazards."  N.J.S.A. 40A:14-81.

Just as a rose is a rose by any other name,[1] so is a political subdivision.  A fire district retains its nature as a political subdivision despite the label or lack of label given to it.  The Legislature has dubbed a municipal parking authority "an agency and instrumentality of the municipality . . . creating it," N.J.S.A. 40:11A-4, and yet gives it the moniker of "political subdivision."  The interchangeable use of the terms "agency," "instrumentality," and "political subdivision" in that statute and others, see N.J.S.A. 40:14A-7, :37C-4(a)-(b), :66A-38, illustrates that the Legislature does not take a formalistic approach in the classification of public bodies.  The

---

[1] See William Shakespeare, Romeo and Juliet act 2, sc. 2.

4

Legislature surely did not intend to classify a municipal parking authority, whose members are appointed by the governing body of a municipality, as a political subdivision, N.J.S.A. 40:11A-4, but not a fire district, for want of a name.

The purpose of OPRA is to make government records "readily accessible for . . . the citizens of this State" and to construe "any limitations on the right of access . . . in favor of the public's right of access." N.J.S.A. 47:1A-1. That legislative goal surely is not advanced by the majority's strained interpretation of the term political subdivision, an interpretation that places fire companies, such as the one in this case, beyond the reach of OPRA. Did the Legislature "pointedly" omit the term political subdivision -- or for that matter the terms agency and instrumentality -- from the fire district statute, as the majority intuits? That is hard to imagine.

Like the governmental authorities and Beach Erosion Control Districts cited above, the Fire District is "an agency created for the exercise . . . of the governmental functions and powers of the state," Martin, supra, 126 N.J.L. at 361, and therefore is a political subdivision.

II.

It follows that if the Franklin Fire District No. 1 is a political subdivision, the Millstone Valley Fire Department is

5

an "instrumentality" of the District.  For OPRA purposes, an "instrumentality" is "[a] thing used to achieve an end or purpose" or "[a] means or agency through which a function of another entity is accomplished, such as a branch of a governing body."  Fair Share Hous. Ctr. v. N.J. State League of Municipalities, 207 N.J. 489, 503 (2011) (alterations in original) (quoting Black's Law Dictionary 814 (8th ed. 2004)).

The primary mission of the Fire District is to prevent and extinguish fires and to regulate fire hazards.  See N.J.S.A. 40A:14-81.  The Millstone Valley Fire Department is an instrument through which that mission is accomplished.  In 1973, the Millstone Valley Fire Department was accepted into the Fire District.  The members of the fire company are "under the supervision and control of the [Fire District] and in performing fire duty shall be deemed to be exercising a governmental function."  N.J.S.A. 40A:14-70.1(b).  Each year, the Millstone Valley Fire Department contracts with the District to provide firefighting services and receives public funds for the training of its members, the housing and maintenance of the District's firefighting equipment, and the purchase of new equipment.

Notably, under N.J.S.A. 40A:14-68, a municipality "may contract with a volunteer fire company or companies . . . for purposes of extinguishing fires," and the members of those companies, "in performing fire duty [are] deemed to be

exercising a governmental function."  No one questions that such volunteer fire companies are instrumentalities of a political subdivision subject to the disclosure requirements of OPRA.

It is difficult to conceive that the Legislature, for OPRA purposes, intended the records of volunteer fire companies aligned with a municipality to be open for inspection and those aligned directly with a fire district to be free from public scrutiny, except as the fire district may be required to disclose certain records.  Our canons of statutory interpretation instruct us to harmonize congruent statutory provisions with the understanding that the Legislature does not intend its enactments to lead to absurd results.  See DiProspero v. Penn, 183 N.J. 477, 492-93 (2005).

I cannot conclude, as does the majority, that the Millstone Valley Fire Department is an "instrumentality of an instrumentality" of a subdivision and therefore not a public agency subject to OPRA.  Ante at ___ (slip op. at 22).  Moreover, even if the Fire District were an instrumentality of the municipality, the Millstone Valley Fire Department is so woven into the fabric of the Fire District -- having no existence outside the District -- it should be deemed the same instrumentality for OPRA purposes.  If the Millstone Valley Fire Department were subject to OPRA, then it could designate the Fire District as the records custodian, with the District's

7

consent.

## III.

Clearly, the majority mitigated the harshness of its decision by ordering the documents sought to be released through the Fire District. But, nevertheless, the majority's holding is that the records of the Millstone Valley Fire Department -- an agency that receives public funds and carries out a government function relating to public safety -- are not subject to OPRA, except to the extent the Fire District has access to those records. I do not believe that result can be squared with OPRA's language or purposes. And it certainly does not further the Legislature's intent "to bring greater transparency to the operations of government and public officials." Paff v. Galloway Township, ___ N.J. ___, ___ (2017) (slip op. at 15).

I therefore respectfully dissent.

8